| | |
|---|---|
| MICHELE G. VELDHUIZEN, | ) |
|       Plaintiff, | ) |
| | ) |
|     v. | )     CAUSE NO.: 4:15-CV-103-PRC |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
|       Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Michele G. Veldhuizen on November 12, 2015, and Plaintiff's Brief [DE 10], filed by Plaintiff on March 14, 2016. Plaintiff requests that the January 17, 2014 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for further proceedings. On May 23, 2016, the Commissioner filed a response. Plaintiff has not filed a reply brief, and the time to do so has passed. For the following reasons, the Court denies Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on July 5, 2011, alleging disability since January 1, 2009. The claim was denied initially and on reconsideration. On April 9, 2012, Plaintiff filed a written request for hearing. On October 30, 2013, Administrative Law Judge David R. Bruce ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, a non-attorney representative, and an impartial vocational expert. On January 17, 2014, the ALJ issued a written decision denying benefits, making the following findings:

    1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2.      The claimant engaged in substantial gainful activity during the following periods: 01/2009 through 12/2010.

3.      However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4.      The claimant has the following severe impairments: carpal tunnel syndrome, degenerative disc disease, fibromyalgia, obesity, bi-polar disorder, post-traumatic stress disorder, depression and alcohol and drug dependence in remission.

5.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with exceptions. Specifically, the claimant is able to lift up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk up to 6 hours in an 8-hour workday and sit up to 6 hour in an 8-hour workday. She is never to climb ladders, ropes or scaffolds or crawl, but may occasionally climb ramps and stairs, and balance, stoop, kneel and crouch. In addition, she is to avoid vibration and slippery or uneven surfaces. Mentally, the claimant is able to remember, understand and carry-out simple tasks and is limited to making simple work related decisions. She is able to have frequent superficial interaction with her supervisors, co-workers and the public. Further, any time off her tasks can be accommodated by normal breaks.

7.      The claimant is unable to perform any past relevant work.

8.      The claimant was born [in 1965] and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

9.      The claimant has at least a high school education and is able to communicate in English.

10.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

11.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

12.    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2009, through the date of this decision.

(AR 32-47).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an

ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite

[her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff filed her application for disability benefits in July 2011, alleging an onset date of January 1, 2009. However, she did not stop working until November 24, 2010. Plaintiff's past relevant work was as a buffer, a cook, a robot operator, a packer palletizer, and a coil winder.

On the initial Disability Report, Plaintiff indicated that she could not work because of various physical health issues and listed depression as a mental health impairment. In this appeal, Plaintiff does not dispute the physical limitations found by the ALJ or that her physical impairments do not make her disabled. Plaintiff's appeal is based solely on her mental impairments.

Plaintiff has no record of mental health treatment until an intake evaluation at Wabash Valley Alliance on September 7, 2011, by Peter Desmangles, LMHC. Plaintiff underwent a consultative psychological examination on September 14, 2011, by Chad A. Pulver, Ph.D., at which Plaintiff reported that she stopped working because of physical issues. Plaintiff then had an individual therapy session on September 28, 2011 with a licensed mental health counselor at Wabash Valley Alliance. On October 3, 2011, Plaintiff began treating at Wabash Valley Alliance with Rachel Johnson, LCSW, for individual therapy and continued to treat with her through at least October 10, 2013, the date of the last treatment recorded in the administrative record. In November 2011, Plaintiff was evaluated by psychiatrist Zeinab Tobaa, M.D., also at Wabash Valley Alliance, who

prescribed Plaintiff's medication. Included in Dr. Tobaa's diagnosis was major depressive disorder. Plaintiff was treated by Dr. Tobaa through at least November 5, 2013, the last treatment date documented in the administrative record.

In her appeal, Plaintiff argues that the ALJ erred in his evaluation of the medical opinion evidence, in assessing Plaintiff's credibility, and in relying on the vocational expert's testimony. The Court considers each argument in turn.

## A. Medical Opinion Evidence

Plaintiff challenges the weight the ALJ gave to the opinion evidence of record.

*1.* *Opinion Evidence*

a. Amy S. Johnson, Ph. D.

On September 15, 2011, consultative reviewer Amy S. Johnson, Ph.D., completed a Psychiatric Review Technique form, having reviewed the September 14, 2011 consultative examination report of Dr. Pulver as well as Plaintiff's application and the third party statement of her sister. (AR 442). Dr. Johnson opined that Plaintiff had mild limitations in activities of daily living, mild limitations in difficulties in social functioning, moderate limitations in difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (AR 452). Dr. Johnson opined that Plaintiff had the mental residual functional capacity to understand, remember, and carry out at least unskilled tasks, attend to a task for sufficient periods of time to complete tasks, and manage the stresses involved with at least unskilled work. Dr. Johnson also completed a Mental Residual Functional Capacity Assessment in which she opined that Plaintiff can understand, remember, and carry-out at least unskilled tasks, can relate on a superficial basis on an ongoing basis with coworkers and supervisors, can attend to tasks for sufficient periods of time to complete the

tasks, and can manage the stresses involved with at least unskilled work. Notably, Plaintiff did not include this consultative opinion in the factual background of her brief.

The ALJ gave this opinion great weight, finding it to be consistent with the record, which the ALJ had summarized in detail over the preceding three and a half pages. *See* (AR 39-42, 43). Specifically, the ALJ noted that Plaintiff is able to care for her son and drive him to his appointments in Indianapolis, Indiana, from her home in Rensselaer, Indiana, for cancer treatment on a daily basis for six weeks in 2013. The ALJ concluded that Plaintiff's ability to perform these tasks shows that her anxiety is not as severe as she alleges because she can leave her home on a daily basis without difficulty and drive without any noted anxiety symptoms. The ALJ also noted that Plaintiff worked after her alleged onset date and, thus, is at most mildly limited in her social functioning. The ALJ found that Plaintiff's ability to take care of her son's daily needs is evidence that she is at most mildly limited in her activities of daily living. Finally, the ALJ acknowledged that there is some evidence that Plaintiff has difficulty with her memory and concentration, along with having periodic hallucinations; however, the ALJ found that the fact that Plaintiff worked after her onset date and that she drove her son to his daily cancer appointments demonstrates that she is at most moderately limited in the area of concentration, persistence, and pace. The ALJ found that no episodes of decompensation are warranted because Plaintiff has never been hospitalized and has never attempted suicide or homicide.

b.     Kari Kennedy, Psy. D.

On March 14, 2012, Kari Kennedy, Psy. D., completed a Psychiatric Review Technique form. Dr. Kennedy opined that Plaintiff had mild limitations in activities of daily living, moderate limitations in difficulties in social functioning, moderate limitations in difficulties in maintaining

concentration, persistence, or pace, and no episodes of decompensation. (AR 584). Dr. Kennedy then completed a Mental Residual Functional Capacity Assessment form, opining that Plaintiff can perform a range of unskilled work, including understanding, carrying out, and remembering simple instructions, responding appropriately to brief supervision and interactions with coworkers, and making judgments commensurate with functions of unskilled work. (AR 586). Dr. Kennedy noted that Plaintiff "may prefer to work in a position that requires minimal interaction with others." (AR 586). In giving this opinion, Dr. Kennedy reviewed the treatment records from September 7, 2011 through February 2, 2012. Dr. Kennedy gave the medical source statement only partial weight because it was based on Plaintiff's self reporting, took the physical limitations into account, and was not entirely consistent with either Plaintiff's activities of daily living or the progress notes. Dr. Kennedy noted that Plaintiff was better with medication, had no mood swings, had no irritability, was sober for six months, and felt better. Dr. Kennedy also reviewed the initial consultative examination on September 14, 2011, at which Plaintiff reported receiving no treatment for mental health issues and the ability to do a variety of activities. Dr. Kennedy further considered the third party statement of Plaintiff's sister, who indicated that the limitations on Plaintiff's activities are due to pain and that Plaintiff gets along fine with others, has no problem with concentration, and follows verbal instructions well but does not handle stress or change well. Plaintiff also did not include this opinion in the factual background of her brief.

The ALJ gave this opinion some weight to the extent it was consistent with the RFC finding. However, the ALJ found that the evidence suggests that Plaintiff is at most mildly limited in her social functioning for the reasons set forth in the analysis of Dr. Tobaa's opinion below.

c.      Zeinab Tobaa, M.D. and Rachel Johnson, LCSW

Plaintiff's treating therapist, Rachel Johnson, completed a Psychiatric/Psychological Impairment Questionnaire on August 22, 2012, which was co-signed by Dr. Tobaa on August 28, 2012. (AR 627-34). The date of the most recent exam was August 7, 2012, with treatment beginning on September 7, 2011. The form indicates relevant diagnoses of bipolar disorder and post traumatic stress disorder on Axis I. On Axis IV financial, poor support, poor health, and family disorder are listed. Plaintiff's prognosis was poor. The following clinical findings were checked: poor memory, appetite disturbance with weight change, sleep disturbance, personality change, mood disturbance, emotional lability, delusions or hallucinations, substance dependence, recurrent panic attacks, psychomotor agitation or retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, grossly disorganized behavior, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience, generalized persistent anxiety, and irritability. (AR 628). Plaintiff's primary symptoms were crying, depression, suicidal ideation, panic, confusion, hallucinations, sleep disturbance, and anger.

Dr. Tobaa opined that Plaintiff is markedly limited in the ability to remember locations and work-like procedures; the ability to understand and remember one or two step instructions; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work related decisions; the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a

10

consistent pace without an unreasonable number and length of rest periods; the ability to respond appropriately to changes in the work setting; the ability to travel to unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently.

Dr. Tobaa opined that Plaintiff was moderately limited in the ability to carry out simple one or two-step instructions; the ability to sustain ordinary routine without supervision; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and the ability to be aware of normal hazards and take appropriate precautions.

Finally, Dr. Tobaa opined that Plaintiff experienced episodes of "deterioration or decompensation in work or work like settings" because she is often tearful, has no tolerance for stress, has rapid mood swings, and "has extreme concentration persistence and pace." (AR 632). The form indicates that Plaintiff is not a malingerer and that her psychiatric condition exacerbates her physical symptoms. Dr. Tobaa indicated that Plaintiff is "incapable of even 'low stress'" based on observations from therapy sessions. (AR 633). Plaintiff is likely to have good days and bad days and is estimated to be absent from work as a result of the impairments or treatment.

The ALJ gave little weight to this opinion on the basis that it was inconsistent with the record and Dr. Tobaa's own treatment record. The ALJ reasoned that, if Plaintiff's impairments were as severe as Dr. Tobaa opines, one would expect that Dr. Tobaa would have hospitalized Plaintiff or have ordered a "more aggressive treatment protocol." (AR 42). The ALJ also reasoned that

Plaintiff's mental symptoms appear to be aggravated by the great deal of chaos and stress caused by her family and that her symptoms do not appear to be caused by an organic mental impairment but instead by situational factors. The ALJ also found that the record shows that Plaintiff is functioning at a higher level than her low GAF scores tend to show, especially because she takes care of her adult son who has advanced cancer, driving him to Indianapolis every day for treatment. The ALJ notes that this suggests she is able to understand, remember, and carry out simple instructions and make simple decisions on a routine basis. The ALJ further found that taking her son to his appointments on a daily basis shows that Plaintiff is capable of maintaining her attention and concentration and is able to perform activities and maintain regular attendance. And, he found that driving her son daily for six weeks was evidence that she would not miss work as Dr. Tobaa opined. Finally, the ALJ finds that, because Plaintiff worked after her alleged onset date above substantial gainful activity levels, she is able to work in proximity of others. The ALJ noted the relationship problems with Plaintiff's family, who were abusive of Plaintiff and who were abusing drugs and alcohol themselves, did not warrant a marked limitation in the area of social functioning.

2.      *Analysis*

        In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. § 404.1527(b). And, the ALJ evaluates every medical opinion received. 20 C.F.R. § 405.1527(c). This includes the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id.* § 405.1527(e)(2).

        An ALJ must give the opinion of a treating doctor controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not

inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to each opinion. 20 C.F.R. § 404.1527(e)(2)(ii), (iii); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th 2008). When a treating physician's opinion is not given controlling weight, the ALJ must nevertheless consider certain factors to determine how much weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability (such as medical signs and laboratory findings), and specialization. 20 C.F.R. § 404.1527(c)(2)-(5).

In this case, Plaintiff makes several arguments in support of her position that the ALJ erred by giving "little weight" to the opinion of treating psychiatrist Dr. Tobaa. The Court notes that the form was completed by Rachel Johnson and co-signed by Dr. Tobaa.

First, Plaintiff argues that the ALJ "demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness." (ECF 10, p. 16 (citing *Punzio v. Astrue*, 630 F.3d 7094, 711 (7th Cir. 2011)). Plaintiff argues that it was error for the ALJ to conclude that, if Plaintiff was as limited as described by the treating psychiatrist, Plaintiff would require inpatient hospitalization or another "more aggressive protocol" because the ALJ failed to cite any medical authority to support this conclusion. *Id*.

Indeed, the Seventh Circuit Court of Appeals has held that, "[t]he administrative law judge went far outside the record when he said that if Voigt were as psychologically afflicted as Day thought, he 'would need to be institutionalized and/or have frequent inpatient treatment"—a medical conjecture that the administrative law judge was not competent to make." *Voigt v. Colvin*, 781 F.3d

871, 876 (7th Cir. 2015) (citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009)). The court went on to explain that "[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking care of themselves." *Id.* As in *Voigt*, there is no evidence in this record that suggests disabling mental impairments must result in hospitalization or that Plaintiff's mental impairments must have resulted in hospitalization in order to be disabling. Plaintiff received ongoing, consistent treatment with therapy and various medications beginning in October 2011. Thus, the lack of hospitalization or "another more aggressive treatment protocol" (which the ALJ does not define) is an improper basis for the ALJ to discredit the opinion of Dr. Tobaa. *See, e.g.*, *Adkins v. Astrue*, No. 309-CV-217, 2010 WL 3782388, at *9 (N.D. Ind. Sept. 21, 2010) ("Because there is no evidence in the record that severe mental impairments necessarily (or even generally) result in hospitalization, and that conclusion seems untenable, this Court concurs with Adkins that his lack of hospitalization was not a proper basis for discrediting his testimony regarding his symptoms.").

Second, Plaintiff contends that it was nonsensical for the ALJ to discount Dr. Tobaa's opinion because Plaintiff's symptoms were aggravated by her home environment and situational stress. Rather, Plaintiff reasons that her difficulty handling the situational stress of her everyday environment supports a finding that she would struggle with the stress involved with working a full-time job on a sustained basis. In support, Plaintiff cites *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010), for its analysis that a plaintiff's waxing and waning symptoms with situational stressors does not contradict a diagnosis of recurrent, major depression. The court in *Larson* noted that "[n]o doctor

14

concluded that Larson's symptoms were just a response to situational stressors as opposed to evidence of depression. *Id.* ("The ALJ's conclusion to the contrary thus finds no support in the record."). The instant case is distinguishable. As the ALJ explained, Plaintiff worked for almost two years while experiencing the stresses at home before she stopped working because of her physical limitations. In addition, the ALJ noted that Plaintiff was able to drive her son long distances on a daily basis over a significant period of time despite these stressors. Unlike *Larson*, this is not a question of waxing and waning symptoms but rather of an ability to focus at work notwithstanding stressors at home. Plaintiff demonstrated she could do so as a result of her work history, and the ALJ reasonably relied on this fact.

Third, Plaintiff argues that the ALJ improperly relied on Plaintiff's activities of daily living, including caring for her adult son with advanced cancer by driving him to medical appointments for treatment on a regular basis. Plaintiff then cites general law, without analysis of the facts of this case, that "her capacity to engage in some daily activities, including driving her son for cancer treatment is hardly comparable to the mental demands of full-time work 8 hours a day, 40 hours a week on a sustained basis." (ECF 10, p. 17 (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Bauer v. Asture*, 532 F.3d 606, 608-609 (7th Cir. 2008)). Unlike the circumstances of those cases, the ALJ in this case explained how the Plaintiff's care for her son showed she is not as limited as Dr. Tobaa suggests. The ALJ reasoned that these long distance trips "suggest that she is able to understand, remember and carry out simple instructions and make simple decisions on a routine basis[,] . . . [maintain] her attention and concentration[,] and . . . perform activities and maintain regular attendance." (AR 42-43). Plaintiff offers not response to this analysis by the ALJ. The ALJ

also explained why he found that Plaintiff was functioning at a higher level than the GAF scores suggested; Plaintiff does not contest this analysis of the ALJ.

Fourth, Plaintiff argues that the ALJ did not dispute that Dr. Tobaa provided support for his opinions, citing the list of factors that were checked on the opinion form, detailed above, such as poor memory, appetite disturbance, sleep disturbance, personality change, etc. *See* (AR 628). Plaintiff argues that these findings are consistent with the treatment notes that document, among other things, slowed movement and slouching posture, a depressed and tearful affect, passive suicidal thoughts, and fair insight, memory, concentration, and judgment, (AR 545) (9/7/2011); a depressed mood, tearfulness, and fair attention and concentration, (AR 558); an anxious, depressed, and labile mood, (AR 691); a depressed mood and tearfulness with a congruent affect, (AR 771); a depressed mood and tearfulness, (AR 798); and a depressed mood, a low and soft voice, and brief responses to questions, (AR 884). While it is true that the ALJ did not dispute that Dr. Tobaa offered some basis for his opinion and that there is record evidence that is consistent with the factors, the findings do not change the ALJ's analysis of the severity of those symptoms and their impact on Plaintiff.

The Court notes that Plaintiff does not address the ALJ's reliance on the fact that Plaintiff worked with her mental impairments and family stressors from January 1, 2009, the alleged onset date, to November 2010 before she stopped working for physical reasons. Plaintiff notes the ALJ's finding in her brief, *see* (ECF 10, p. 15), but Plaintiff does not contest this as a proper basis for the weight the ALJ gave to Dr. Tobaa's opinion.

Finally, Plaintiff argues that the only contradictory evidence credited by the ALJ were reports by Dr. Johnson and Dr. Kennedy, the non-examining state agency psychologists. (AR 43).

Although Plaintiff is correct that the opinion provided by "a non-examining physician does not, by itself, suffice [as substantial evidence]," *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014), the ALJ did not rely solely on the opinion of these non-examining physicians to discredit the opinion of Dr. Tobaa. Rather, as set forth above, the ALJ gave numerous reasons unique to Dr. Tobaa's opinion for discrediting it on its own. In fact, the ALJ does not reference either of the consultative reviewer opinions in the analysis of Dr. Tobaa's opinion. *See* (AR 42-43). Although the ALJ erred in finding the lack of hospitalization as a basis for discounting the severity of Dr. Tobaa's opinion, the remaining reasons and analysis of the record are sufficient to support the weight given by the ALJ to the opinion.

Moreover, the ALJ properly explained the weight given to Dr. Tobaa's opinion under the factors enumerated in the regulations. Plaintiff argues that the ALJ failed to consider the statutory factors, noting that Dr. Tobaa treated Plaintiff regularly at Wabash Valley Alliance since September 2011, that the nature of the treatment focused on Plaintiff's mental disability with appropriate medications and therapy, and that Dr. Tobaa is a psychiatrist and suggesting that the ALJ ignored these factors. (ECF 19-20). Plaintiff is incorrect. The ALJ thoroughly discussed the entire record over multiple pages, documenting in detail the longitudinal record of Plaintiff's treatment at Wabash Valley Alliance by both Rachel Johnson and Dr. Tobaa. The fact that the ALJ did not specifically mention that Dr. Tobaa is a psychiatrist in the decision does not change this analysis.

Plaintiff also asserts that there are problems with the examining physicians' opinions such that the ALJ's reliance on those opinions is improper. First, Plaintiff notes that Dr. Johnson's opinion, to which the ALJ gave the greatest weight, was issued on September 15, 2011, when "there

were absolutely no psychiatric treatment records . . . available for review." (ECF 10, p. 18). This is incorrect. Dr. Johnson reviewed the September 14, 2011 record of consultative examiner Dr. Pulver. *See* (AR 440 (noting, in her functional capacity assessment, the consultative examiner's diagnosis of "MDD" the GAF score of 48, commenting that it was low given the mental status examination and reasoning that the consultative examiner may have considered physical problems in the rating)). In his September 14, 2011 report, Dr. Pulver diagnosed Plaintiff with Major Depression. Dr. Pulver noted that Plaintiff was on time and was tearful throughout the session; he noted her educational history, her work history, and the status of her family, including that two adult sons had cancer; he noted that she denied suicidal thoughts but offered, "I wish I wouldn't wake up some days. I would never hurt myself though;" he noted her report that she desired counseling and that she self reported difficulty concentrating and lack of motivation; and he noted her daily functions, including sleeping in late, her lack of motivation to cook, and difficulties driving. (AR 435-37).

As for the weight given to Dr. Johnson's opinion, the ALJ assessed the consistency of Dr. Johnson's opinion with all of the record evidence. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ took great care to explain why Dr. Johnson's opinion was consistent with Plaintiff's daily activities, such as driving her son to Indianapolis for medical treatment, and the fact that Plaintiff worked at substantial gainful activity after her onset date for over a year. Dr. Johnson also relied on and discussed the third party report provided by Plaintiff's sister, which indicated that Plaintiff's household chores were limited due to physical pain, that Plaintiff got along with others, that she had no problem with concentration, and that she followed verbal instructions well. *See* (AR 440 (citing AR 193-99)). Dr. Johnson also relied on Plaintiff's own reports that she could do a

variety of daily activities. Finally, the ALJ specifically considered Plaintiff's allegations of difficulty with memory and concentration and periodic hallucinations but contrasted this against her work activity and ability to care for and drive her son. *See* (AR 43). The ALJ properly weighed the opinion of Dr. Johnson.

As for Dr. Kennedy, Plaintiff argues that Dr. Kennedy reviewed the file on March 14, 2012, based on notes through February 2, 2012, which was "two years prior to the ALJ's decision." (ECF 10, p. 18). But Plaintiff fails to note that Dr. Tobaa—the treating physician—gave his opinion in August 2012, which was eighteen months before the ALJ's decision. Dr. Kennedy had the benefit of the same type of treatment records as Dr. Tobaa in giving her opinion, and Plaintiff offers no analysis of the records between February 2, 2012, and early August 2012 that make Dr. Tobaa's opinion more reliable than that of Dr. Kennedy. The narrative portion of Dr. Kennedy's opinion sets out the factual basis for the opinion. Plaintiff does not contest this portion of Dr. Kennedy's opinion. Also, Dr. Kennedy's opinion was entirely consistent with Dr. Johnson's opinion, with the exception that Dr. Kennedy found Plaintiff moderately limited while Dr. Johnson found Plaintiff mildly limited in difficulties of social functioning. This difference is the reason that the ALJ gave less weight to the opinion of Dr. Kennedy because, as set forth above, the ALJ explained that Plaintiff was at most mildly limited in social functioning because she was able to work in proximity with others at substantial gainful activities levels for a significant period of time after her alleged onset. Plaintiff offers no argument regarding this finding.

Because the ALJ did not err in finding that Dr. Tobaa's opinion is inconsistent with substantial evidence of record, the ALJ did not err in the weight given to the opinion. Remand is not warranted on this basis.

**B. Credibility Determination**

On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's January 17, 2014 decision is governed by the standard of SSR 96-7p.

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler*, 688 F.3d at 310-11 (quotation marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p,

1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

After summarizing Plaintiff's statements in the record regarding her mental impairment, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. The ALJ then went on to give a detailed summary of the evidence of record of Plaintiff's mental impairments over three and a half single-spaced pages. *See* (AR 39-42). In considering Plaintiff's symptoms, the ALJ discussed Plaintiff's ability to work for two years after her alleged onset date; her treatment history, including that her therapy sessions focused on her numerous family conflicts and that she improved with medication; her activities, including caring for her son and driving him to Indianapolis; and the suggestion that she may have exaggerated her physical symptoms to obtain medication.

Plaintiff contends that the ALJ failed to properly evaluate her credibility, arguing that the ALJ's findings are "little more than a reiteration" of the flawed reasoning he used to discount the opinions of Dr. Tobaa. As set forth above, the only flaw in this reasoning is the ALJ's reliance on the lack of hospitalization or more "aggressive treatment." Yet, for the same reasons set out above in the Court's discussion of the weight given to Dr. Tobaa's opinion, the remainder of the ALJ's analysis supports his credibility determination and the ALJ properly considered the relevant factors. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (properly considering activities of daily living in the credibility determination); *Pepper*, 712 F.3d at 369 (same). Notably, the ALJ credited

Plaintiff's allegations to some degree. For example, the ALJ cited Plaintiff's testimony that she had problems with her short-term memory, following directions, and concentrating and that she did not take criticism well and had anger issues. (AR 36). The ALJ also reasoned that Plaintiff improved with medication and sobriety, citing specific records. And, the ALJ discussed the records showing when Plaintiff's symptoms worsened, which were often during the times of increased family conflict. Finally, the overall credibility determination was not limited solely to Plaintiff's mental impairment; the ALJ also considered Plaintiff's credibility in light of her physical health treatment history, including that Plaintiff stopped seeking treatment for physical issues around the same time that she stopped abusing Vicodin in 2011. Plaintiff does not address this reasoning.

The only new argument made by Plaintiff in this section is that the ALJ erred by criticizing Plaintiff's delay in starting treatment and periods of non-compliance. Plaintiff cites cases in which the Seventh Circuit Court of Appeals noted that individuals with mental impairments often have difficulty obtaining and maintaining treatment due to their illness rather than because of a lack of severity of the condition. (ECF 10, p. 22 (citing *Jelinek*, 662 F.3d at 814; *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011)). While the lack of treatment may be a symptom of the underlying mental illness in some cases, "infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). There is no indication in the record that Plaintiff's delay in starting treatment or periods of non-compliance are because of her depression. Plaintiff makes no such argument either. Rather, she notes, without any analysis, that Plaintiff "exhibited decreased insight and judgment." (ECF 10, p. 22 (citing (AR 545))). However, page 545 of the administrative record is the initial mental evaluation Plaintiff underwent

with Mr. Desmangles on September 7, 2011; on a form, Mr. Desmangles selected "fair" on a scale of "good/fair/poor" for the categories of "insight" and "judgment." This is not evidence that Plaintiff did not get mental health treatment prior to September 2011 or had periods of noncompliance because of her depression.

The credibility determination is not patently wrong, and remand is not warranted.

### C. Vocational Expert Testimony

Plaintiff argues that the ALJ failed to present a hypothetical to the vocational expert that accurately described all of Plaintiff's mental limitations that the ALJ had recognized. Plaintiff notes that, in his step three analysis, the ALJ found that Plaintiff has moderate limitations in her ability to maintain concentration, persistence, and pace. (ECF 10, p. 22 (citing (AR 34))). Plaintiff argues that it was error for the ALJ then to rely on the hypothetical question to the vocational expert that only limited Plaintiff mentally "to simple tasks and simple work related decisions, which I define to be SVP 1 and 2 type jobs, with frequent but superficial contact with co-workers, supervisors, and the public. . . . [A]ny time off task would have been accommodated by normal breaks." (AR 85). Plaintiff reasons that it was error for the ALJ to find a moderate restriction in concentration, persistence, or pace but then fail to include those restrictions in the hypothetical and instead limit the claimant to simple, routine, repetitive work.

The Court finds that the ALJ relied on a proper hypothetical to the vocational expert because it was based on the limitations in the residual functional capacity, which were taken directly from the narrative portion of Dr. Johnson's mental residual functional capacity assessment. In this case, the ALJ included mental limitations in the RFC that Plaintiff is able to "remember, understand and carry-out simple tasks and is limited to making simple work related decisions." (AR 35). The ALJ

further included the ability "to have frequent superficial interaction with her supervisors, co-workers and the public." *Id*. Finally, the ALJ found that "any time off her tasks can be accommodated by normal work breaks." *Id*.

These limitations are consistent with the findings of the opinion of Dr. Johnson in Section III, the narrative portion of the mental residual functional capacity assessment form. Dr. Johnson translated Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace into a mental residual functional capacity opinion that Plaintiff can understand, remember, and carry-out at least unskilled tasks; attend to tasks for sufficient periods of time to complete tasks; and manage the stresses involved with at least unskilled work. (AR 440). Likewise, Dr. Kennedy translated Plaintiff's moderate limitations in concentration, persistence, or pace into a residual functional capacity to perform a range of simple, unskilled work.

Thus, the ALJ did not simply assume that a limitation to a range of simple tasks would accommodate Plaintiff's moderate difficulties in concentration, persistence, or pace but instead relied on the final conclusion of the reviewing psychologists of a residual functional capacity for simple tasks. *See Murphy v. Astrue*, 454 F. App'x 514, 518 (7th Cir. 2012); *Milliken v. Astrue*, 397 F. App'x 218, 221-22 (7th Cir. 2010); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002). Thus, the ALJ's hypothetical question reasonably accounted for all the limitations in the RFC.

In support of her argument, Plaintiff cites *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015). However, *Varga* is distinguishable because the narrative portion of the reviewing psychologist's opinion translating his worksheet findings into a residual functional capacity opinion could not be located. *Id*. at 816. As a result, the court held that, "where . . . no narrative translation exists—because of error on the part of the doctor or the agency—an ALJ's hypothetical question

to the VE must take into account any moderate difficulties in mental functioning found in Section I of the MRFCA form, including those related to concentration, persistence, or pace." *Id*.

In this case, the hypothetical was proper, and remand is not warranted on this basis.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in Plaintiff's Brief [DE 10]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

So ORDERED this 16th day of March, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT